UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CREELGROUP,

    Plaintiff,

-vs-

Case No. 09-12493
Hon: AVERN COHN

GEOFFREY BRIEDEN,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This is a breach of fiduciary duty and tortious interference case. Plaintiff The Creelgroup (Creelgroup) provides human resource consulting and brokerage services to employers. Defendant Geoffrey Brieden (Brieden) was employed by Creelgroup from February 2007 until September 2, 2008. Creelgroup claims that Brieden improperly competed with it and solicited one of its clients, Oakwood Hospital and Medical Center (Oakwood), while an employee. Creelgroup also claims that Brieden wrongfully disclosed trade secrets to a third party.

The complaint is in three counts:

(I) Breach of Fiduciary Duty;

(II) Tortious Interference with Business Relations; and

(III) Misappropriation of Trade Secrets and Violation of the Michigan Uniform Trade Secrets Act (MUTSA).

Now before the Court is Brieden's motion for summary judgment on Count I and II, on grounds that he was only preparing to compete while employed by Creelgroup and did not actually compete until his employment ended (Doc. 14).[1] Because genuine issues of material fact exist, the motion will be denied.

## II. FACTS

### A. Employment Relationship

Brieden was employed by Creelgroup from February 2007 until his termination on September 2, 2008 in part to service Oakwood, one of Creelgroup's clients. Brieden was also hired to secure new business for Creelgroup. There is no dispute that Creelgroup employed Brieden at will, with no non-compete or confidentiality agreement. Brieden worked with Oakwood's Vice-President of Human Resources, Paul Conway (Conway), with whom he had worked closely prior to employment by Creelgroup. In early 2008, Joseph Creel (Creel), President of Creelgroup, informed Brieden that his employment could not continue in its present form unless he was able to show progress toward identifying and securing new business for Creelgroup.

In April 2008, Creel and Brieden began to negotiate the terms of Brieden's employment. Creelgroup asserts that prior to September 2, 2008, Brieden agreed he would enter into an agreement with Creelgroup that would describe the terms under which he could solicit Creelgroup's clients upon the termination of his employment relationship and that would execute agreements with non-competition provisions in them. Brieden asserts that he declined to sign any documents which resulted in his termination.

---

[1] Creelgroup filed a motion to dismiss Count III with prejudice that has been granted (Doc. 27).

Creel and Brieden never finalized a modified employment contract. On August 28, 2008, Brieden and Creel discussed Brieden's resignation. During that conversation, Brieden informed Creel that he had arranged to take an equity position with Kane Atwood Group Services (Kane Atwood), a company that he had organized; that he had a joint operating agreement in place with two other people; and that Kane Atwood was already up and running. Brieden's employment ended September 2, 2008.

### B. Acts of Preparation

While Brieden was still employed by Creelgroup, he prepared documents for use with Kane Atwood and other documents designed to transition Creelgroup's Oakwood business to Kane Atwood. The preparation included the creation of two proposals to divide Creelgoup's Oakwood account between Creelgroup and Kane Atwood. Creelgroup asserts they are nothing more than plagiarized versions of Creelgroup's marketing material. The first proposal was created by Brieden on April 4, 2008, modified August 19, 2008, and printed August 19, 2008. The second proposal was created on April 4, 2008, modified August 21, 2008, and printed August 21, 2008. Brieden also prepared a cash flow analysis spreadsheet with a fiscal year beginning in July of 2008. This spreadsheet identifies Pre-Startup cash paid out (i.e. before September 2008) for outside services, supplies, marketing, entertainment and accounting & legal. Brieden also created a document entitled "Kane Atwood Consulting Agreement.doc," which is almost identical to "The Creelgroup Standard Consulting Agreement." He then registered Kane Atwood as a d//b/a with Wayne County, Michigan on July 10, 2008. On August 19, 2008, he prepared at least seven different letters for Conway's signature that

3

were designed to designate Kane Atwood as the agent of record for Oakwood's welfare benefit programs.

## C. Soliciting Oakwood

The parties dispute when Brieden started to solicit Oakwood's business on his own behalf. On August 22, 2008, Brieden had lunch with Conway. Immediately following their meeting Brieden sent an email to Creel indicating he would not sign any proposed employment documents.

Creel testified that on August 28, 2008, during a phone conversation with Brieden regarding his resignation, Brieden informed Creel that he had already made a recommendation to Conway to divide up Creelgroup's current business between Kane Atwood and Creelgroup. Creel says that Brieden told him that Conway supported and liked Brieden's suggestions, which were written on a 3x5 card that Conway tucked away into his pocket during the meeting. On August 29, 2008, the President of NGS American, Inc., one of Creelgroup's clients, sent an email to Brieden stating "Best wishes in your new venture, Geoff! I'm glad Oakwood is going with you and we'll be able to keep our business relationship with you."

Brieden disputes that he made any recommendation to Conway before he left Creelgroup. He admits meeting with Conway, but he says that he and Conway discussed rising health care costs or a wellness plan that was being implemented, not the transfer of Oakwood's business to Kane Atwood. Conway also testified that Brieden did not solicit business from Oakwood at that meeting or at any time prior to September 8, 2008, nor did Brieden have had any level of security that he was getting Oakwood's business.

On September 11, 2008, Kane Atwood and Oakwood entered into a "Consulting Agreement." On September 12, 2008, Conway asked Creel to provide Brieden with a copy of Creelgroup's Commission and Fee breakdown on Oakwood Health Care, because he believed Creelgroup and Brieden were working with separate data. He also told Creel that he was to negotiate with Brieden and attempt to reach an agreement regarding the division of business, so he did not have to get involved. When Creel called Brieden, Brieden told him that he did not have to negotiate because he already had the benefits he was proposing taking. On September 30, 2008, Oakwood sent letters, prepared by Brieden to NGS American, Inc.; Health Alliance Plan; National Vision Administration; Metlife; and Value Options, Inc. designating Brieden and Kane Atwood as agent of record in place of Creelgroup and directing all commissions to be paid directly to Kane Atwood. Consequently, Creelgroup no longer receives the commissions associated with the plans.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. FED. R. CIV.

P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

## IV. ANALYSIS

Creelgroup claims that Brieden, while still employed by Creelgroup, competed with Creelgroup, solicited customers of Creelgroup, and interfered with Oakwood's assignment and/or delegation of work to Creelgroup. If Creelgroup demonstrates the existence of an issue of fact, the Court must determine whether the fact is material. The Court must consider a disputed fact material and deny summary judgment when, in light of the law of the case, that fact is outcome determinative. Bouggess v. Mattingly, 482 F.3d 886, 888 (6th Cir. 2007); Sova v. City of Mount Pleasant, 142 F.3d 898, 903 (6th Cir. 1998). In contrast, if a disputed fact has no bearing on the outcome of the case, it is not material and will not preclude summary judgment.

### A. The Law

### 1. Breach of Fiduciary Duty

An agent is "subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Raymond James & Associates, Inc. v. Leonard & Company, 411 F. Supp. 2d 689, 699 (E.D. Mich. 2006) (citing RESTATEMENT (SECOND) OF AGENCY § 387). This rule "forbids the doing of acts in competition with the principal and the acquisition of interests adverse to him." Id. However, the act of preparation to compete during current employment does not constitute a breach of fiduciary duty. Id. ("Preparations, of themselves, do not support a breach of fiduciary duty, given 'the public policy of Michigan . . . of protecting and encouraging the right of the individual to pursue his livelihood in the vocation he

6

chooses, including the right to migrate from one job to another.'" (quoting Hayes-Albion v. Kuberski, 421 Mich. 170, 188 (1981))). Post-employment, a former employee is free to compete with former employer using his general skills and knowledge, but he may not use former employer's trade secrets. Hayes-Albion, 421 Mich. at 180 (citing Glucol Mfg. Co. v. Schulist, 239 Mich. 70, 74 (1927)). An employer cannot maintain a claim for post-employment breach of fiduciary duty based on solicitation of former clients unless the parties executed an appropriate non-competition agreement. Id. (citing McKesson Med. – Surgical Inc. v. Micro Bio-Medics, Inc., 266 F. Supp. 2d 590 (E.D. Mich. 2003)).

In Chem-Trend, Inc. v. McCarthy, 780 F. Supp. 458, 461 (E.D. Mich. 1991), the court found egregious behavior that demonstrated a serious breach of fiduciary duty. The defendant manufactured competitive products, marketed those products exclusively to the employer's existing clients, and actually consummated bulk scale sales several weeks before the left the company. Id. In comparison, the defendant in Raymond James waited until he resigned before competing with his former employer and did not use information entrusted to him or made by him for use in the principal's business, thus there was no breach of fiduciary duty. Raymond James, 411 F. Supp. 2d at 700.

### 2. Tortious Interference with a Business Expectancy

The elements of tortious interference with a business relationship are "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." BPS Clinical Lab. v. Blue Cross & Blue Shield, 217 Mich. App. 687, 698-99 (1996). In addition, "one who alleges tortious interference must

allege the intentional doing of a per se wrongful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." Feldman v. Green, 138 Mich. App. 360, 369-70 (1984). The plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate an improper motive by the defendant. BPS Clinical Lab., 217 Mich. App. at 699. Actions are not considered improper or interfering if motivated by legitimate business reasons. Id.; see also Hutton v. Roberts, 182 Mich. App. 153, 158 (1989) (reasoning that making an offer is not enough, it is necessary to show some active solicitation).

In Raymond James, 411 F. Supp. 2d at 698 the defendant was found to have interfered with his former employer's business and customers. However the interference was not tortuous because his act of preparing forms which enabled the customer to transfer his account was neither per se wrongful nor malicious. Id. Similar to the standard for breach of fiduciary duty, mere preparation to compete is qualitatively different than actually competing, which is per se wrongful. Id.; see also E.F. Hutton & Co., 403 F. Supp. 336, 342-43 (E.D. Mich. 1975) (denying a preliminary injunction because there was no affirmative proof that prepared materials actually were put into possession of client). The Court reasoned that the defendant is allowed to *establish* his own business and communicate with customers for whom he had formerly done work in his previous employment, but once he engages in competition, there is interference. Id. (citing Hayes-Albion, 421 Mich. at 184). The Court held that plaintiff had not established a likelihood of success on the merits for interference required for a preliminary injunction because there remained a substantial question as to whether defendant was making arrangements to compete, or engaging in proscribed forms of competition. Id.

## B. ANALYSIS

## 1. Breach of Fiduciary Duty

Brieden claims that he did not engage in improper competition with Creelgroup, while he was still employed, because he did not submit any type of proposal or transition documents to Oakwood until after his employment with Creelgroup was terminated. There is no dispute that Brieden prepared documents to start Kane Atwood, a company designed to compete with Creelgroup, and transition Oakwood's business to Kane Atwood, while he was still employed by Creelgroup. However, the parties dispute whether or not Brieden began competing with Creelgroup and soliciting Oakwood's business while he was still employed by Creelgroup.

Creelgroup asserts that Brieden performed overt acts of competition prior to his termination. Creel testified that on August 28, 2008 Brieden informed him that he had already made a recommendation to Conway to divide up Creelgroup's business between Kane Atwood and Creelgroup prior to his termination. Creel further testified that Brieden also told him that Conway liked his suggestions which were memorialized on a 3x5 card that Conway kept. Creel also says that on August 28, 2008 Brieden sent him an email transmitting a "Benefit Proposal" describing the benefits and commission he recommended Oakwood transition from Creelgroup to Kane Atwood. In addition to Creel's statements, the August 29, 2008 email sent by President of NGS American, Inc. which congratulates Brieden on gaining Oakwood as his client, suggests that Brieden was actively soliciting Oakwood before his employment was terminated on September 2, 2008.

Brieden denies that he made any recommendation to Conway before leaving Creelgroup. His denial is corroborated by Conway. Further Conway did not send the new agent of record letters to carriers until September 30, 2008, more than a month after the alleged solicitation.

If Brieden solicited Oakwood's business while still employed by Creelgroup, he would be liable for breach of fiduciary duty. The parties dispute whether Brieden solicited Oakwood's business on August 28, 2008 – before his resignation and termination – or in early September – after his employment ended. The Court cannot resolve this dispute without weighing the credibility of the witnesses, a task reserved the jury. Because there is a genuine issue of material fact regarding the date of Brieden's solicitation of Oakwood's business, Brieden's motion for summary judgment with respect to breach of fiduciary duty must be denied.

## 2. Tortious Interference with a Business Expectancy

As described above, active solicitation of a current employer's client is per se wrongful and constitutes tortious interference with a business expectancy. For the reasons stated above, there is a genuine issue of material fact as to whether Brieden solicited Oakwood's business prior to the termination of his employment with Creelgroup. Therefore Brieden's motion for summary judgment with respect to tortuous interference must also be denied.

## V. Conclusion

For the foregoing reasons, Brieden's motion for summary judgment is DENIED with respect to Count I and II. The dispute regarding Brieden's solicitation of Oakwood's business must be resolved by a jury.

SO ORDERED.


Dated: July 29, 2010            S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 29, 2010July 29, 2010, by electronic and/or ordinary mail.

S/Julie Owens
Case Manager, (313) 234-5160